# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
DONNA DUPREY                 :    Civ. No. 3:17CV00607(SALM)
                             :
v.                           :
                             :
NANCY A. BERRYHILL,          :
ACTING COMMISSIONER OF       :
SOCIAL SECURITY              :    April 19, 2018
                             :
-----------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff Donna Duprey ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Act. Plaintiff moves to reverse the decision of the Commissioner.[1] [Doc. #21]. Defendant cross moves to affirm the decision of the Commissioner. [Doc. #23].

For the reasons set forth below, plaintiff's Motion for Order Reversing the Decision of the Commissioner **[Doc. #21]** is **DENIED,** and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #23]** is **GRANTED.**

---

[1] Plaintiff alternatively requests remand to the Social Security Administration for a new hearing. See Doc. #21-2 at 26.

## I.  **PROCEDURAL HISTORY**[2]

Plaintiff filed concurrent applications for DIB and SSI on October 13, 2011, alleging disability beginning September 30, 2011. See Certified Transcript of the Administrative Record, compiled on June 1, 2017, Doc. #16 (hereinafter "Tr.") 468, 470. Plaintiff's applications were denied initially on February 24, 2012, see Tr. 358-65, and upon reconsideration on August 29, 2012. See Tr. 369-74.

On May 6, 2013, plaintiff, represented by Attorney Lorenzo Cicchiello, appeared and testified at a hearing before Administrative Law Judge Robert A. DiBiccaro ("ALJ"). See Tr. 155-97. On June 27, 2013, the ALJ issued an unfavorable decision. See Tr. 332-52. On September 16, 2014, the Appeals Council vacated the ALJ's decision and remanded the matter. See Tr. 353-57. The Appeals Council directed the ALJ to "[o]btain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base[.]" Tr. 355. Plaintiff, again represented by Attorney Cicchiello, appeared and testified at another hearing before the ALJ on April 6, 2015. See Tr. 198-255. Vocational Expert ("VE") Richard Barry Hall also testified during the April 6, 2015, hearing. See

---

[2] The parties agreed to a stipulated statement of facts. [Doc. #21-1].

Tr. 198, 241-52. On October 26, 2015, the ALJ again issued an unfavorable decision. <u>See</u> Tr. 8-31. On February 16, 2017, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's October 26, 2015, decision the final decision of the Commissioner. <u>See</u> Tr. 1-5. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff timely filed this action for review and now moves to reverse the Commissioner's decision, or in the alternative, remand for a new hearing. <u>See</u> Doc. #21. On appeal, plaintiff argues:

1. The ALJ improperly weighed the medical source statements;

2. The ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence;

3. The ALJ failed to develop the record;

4. The ALJ's vocational analysis is flawed; and

5. The ALJ failed to analyze plaintiff's impairments in combination.

<u>See generally</u> Doc. #21-2. As set forth below, the Court finds that the ALJ did not err as contended by plaintiff, and that the ALJ's determination is supported by substantial evidence.

## II.  **STANDARD OF REVIEW**

The review of a Social Security disability determination involves two levels of inquiry. <u>First</u>, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. <u>Second</u>, the Court must decide whether the determination is supported by substantial evidence. <u>See</u> <u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. <u>See</u> <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. <u>See</u> <u>Norman v. Astrue</u>, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing <u>Tejada v. Apfel</u>, 167 F.3d 770, 773-74 (2d

Cir. 1999))). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing Carroll v. Sec. Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, No. 3:13CV73(JCH), 2014 WL

1304715, at *6 (D. Conn. Mar. 31, 2014) (citing <u>Peoples v.</u>
<u>Shalala</u>, No. 92CV4113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4,
1994)).

It is important to note that in reviewing the ALJ's
decision, this Court's role is not to start from scratch. "In
reviewing a final decision of the SSA, this Court is limited to
determining whether the SSA's conclusions were supported by
substantial evidence in the record and were based on a correct
legal standard." <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir.
2012) (quoting <u>Lamay v. Comm'r of Soc. Sec.</u>, 562 F.3d 503, 507
(2d Cir. 2009)). "[W]hether there is substantial evidence
supporting the appellant's view is not the question here;
rather, we must decide whether substantial evidence supports <u>the</u>
<u>ALJ's decision</u>." <u>Bonet ex rel. T.B. v. Colvin</u>, 523 F. App'x 58,
59 (2d Cir. 2013) (citations omitted).

## III. <u>SSA LEGAL STANDARD</u>

Under the Social Security Act, every individual who is
under a disability is entitled to disability insurance benefits.
42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore
entitled to benefits, a plaintiff must demonstrate that he or
she is unable to work after a date specified "by reason of any
medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §§404.1520(c), 416.920(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe").[3]

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §§404.1520, 416.920. In the Second Circuit, the test is described as follows:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work

---

[3] Some of the Regulations cited in this decision were amended effective March 27, 2017. Throughout this decision, and unless otherwise specifically noted, the Court applies and references the versions of those Regulations that were in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (applying and referencing version of regulation in effect when ALJ adjudicated plaintiff's claim); see also Alvarez v. Comm'r of Soc. Sec., No. 14CV3542(MKB), 2015 WL 5657389, at *11 n.26 (E.D.N.Y. Sept. 23, 2015) ("[T]he Court considers the ALJ's decision in light of the regulation in effect at the time of the decision." (citing Lowry, 474 F. App'x at 805 n.2)).

activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243

(2d Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003));
Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per
curiam)). The RFC is what a person is still capable of doing
despite limitations resulting from his or her physical and
mental impairments. See 20 C.F.R. §§404.1545(a)(1),
416.945(a)(1).

"In assessing disability, factors to be considered are (1)
the objective medical facts; (2) diagnoses or medical opinions
based on such facts; (3) subjective evidence of pain or
disability testified to by the claimant or others; and (4) the
claimant's educational background, age, and work experience."
Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978).
"[E]ligibility for benefits is to be determined in light of the
fact that 'the Social Security Act is a remedial statute to be
broadly construed and liberally applied.'" Id. (quoting Haberman
v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV.   **THE ALJ'S DECISION**

Following the above-described five-step evaluation process,
the ALJ concluded that plaintiff was not disabled under the Act
through October 24, 2015. See Tr. 12. At step one, the ALJ found
that plaintiff had not engaged in substantial gainful activity
since the alleged onset date of September 30, 2011. See Tr. 14.
At step two, the ALJ found that plaintiff had the severe

impairments of "coronary artery disease, status post myocardial infarction; obesity; panic disorder; [and] obsessive compulsive disorder[.]" Id. The ALJ considered plaintiff's back pain and left knee pain, and found that they were not severe impairments. See Tr. 14. The ALJ also considered plaintiff's history of elbow issues and found that those issues did not "meet the duration requirement for a severe impairment." Id.

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. See Tr. 15-16. The ALJ specifically considered plaintiff's physical limitations under the cardiac listings in Section 4.00. See Tr. 15. The ALJ also considered plaintiff's mental impairments under Listing 12.06 for anxiety-related disorders.

Before moving on to step four, the ALJ found plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§404.1567(b) and 416.967(b). See Tr. 16. The ALJ further found plaintiff limited as follows:

> She can occasionally climb ramps, balance, kneel, crouch, crawl and stoop. She must avoid concentrated exposure to cold. She must avoid concentrated exposure to hazards, such as dangerous moving machinery and unprotected heights. She can interact with supervisors and co-workers for only 5 percent to 10 percent of the workday and she should avoid interaction with the general public. She can perform simple, routine,

repetitious tasks. She should avoid stressful work situations work involving a production pace, such as piecework.

Id.

At step four, the ALJ concluded that plaintiff was not capable of performing her past relevant work as a personal care attendant or a housekeeper. See Tr. 21. At step five, after considering plaintiff's age, education, work experience, and RFC, and after consulting a VE, the ALJ found that there existed jobs in significant numbers in the national economy that plaintiff could perform. See Tr. 22.

## V. **DISCUSSION**

Plaintiff raises five arguments in support of reversal or remand. See generally Doc. #21-2. The Court will address each argument in turn.

### A. **Weight Afforded to Medical Source Statements**

Plaintiff contends that the ALJ improperly gave "limited weight" to the opinions of plaintiff's therapist, Licensed Clinical Social Worker ("LCSW") Ashley Egner. See Doc. #21-2 at 1-8. Defendant responds that the ALJ properly addressed and considered the medical opinions of record. See Doc. #23-1 at 4-7.

Only "acceptable medical sources" are considered treating sources whose opinions are entitled to controlling weight. See

20 C.F.R. §§404.1527(a)(2), (c), 416.927(a)(2), (c). Acceptable
medical sources include, <u>inter alia</u>, licensed physicians and
licensed or certified psychologists. <u>See</u> 20 C.F.R.
§§404.1513(a), 416.913(a). Therapists, APRNs, physician
assistants, and LCSWs, amongst others, are not acceptable
medical sources, but are rather considered "other sources." <u>See</u>
20 C.F.R. §§404.1513(d)(1)-(4), 416.913(d)(1)-(4); <u>see also</u>
Social Security Ruling ("SSR") 06-03P, 2006 WL 2329939, at *2
(S.S.A. Aug. 9, 2006); <u>Nieves v. Colvin</u>, No. 14CV01736(VLB),
2017 WL 1050569, at *4 (D. Conn. Mar. 20, 2017) ("As an LCSW,
Counselor Tuers is not a 'treating source' under the social
security regulations."). Opinion evidence from these "other
sources" may be used to show "the severity of [a claimant's]
impairment(s) and how it affects [a claimant's] ability to
work[.]" 20 C.F.R. §§404.1513(d), 416.913(d). An ALJ "generally
should explain the weight given to opinions from these 'other
sources,' or otherwise ensure that the discussion of the
evidence in the determination or decision allows a claimant or
subsequent reviewer to follow the adjudicator's reasoning[.]"
SSR 06-03P, 2006 WL 2329939, at *6.

LCSW Egner provided two opinion statements, one in July,
2012, and one in April, 2015. <u>See</u> Tr. 1087-90, 1473-75.

### 1. LCSW Egner's 2012 Opinion

The ALJ properly noted that LCSW Egner is not an acceptable medical source, and that her opinion is entitled to less weight as a result. See Tr. 20. The ALJ nevertheless credited LCSW Egner's 2012 opinion, stating: "The mental residual functional capacity findings made by the undersigned are consistent with [the 2012] report, and restrict the claimant's interaction with others significantly." Tr. 20. Plaintiff argues the ALJ's mental RFC is not consistent with LCSW Egner's 2012 opinion because "it still does nothing to address the very serious problems of being unable to work at pace and for a full work week." Doc. #21-2 at 6.

LCSW Egner's 2012 opinion noted that plaintiff had a very serious problem with pace and working a full work week. See Tr. 1089. However, LCSW Egner's opinion went on to clarify that plaintiff's "task performance is only affected by her anxiety about having a panic attack or actually experiencing a panic attack." Id. LCSW Egner's opinion statement also notes that plaintiff "displays ability to socially interact appropriately. Only behavioral extreme is anxiety surrounding potential panic attack." Id.

The record suggests plaintiff's panic attacks are brought on by interactions with groups of people. See, e.g., Tr. 1165

(plaintiff's cardiologist Jon Gaudio reporting that "[s]he has trouble with any crowds[]"); Tr. 181 (plaintiff's testimony in 2013 that if "there's, like, a, too many people, I will have a panic attack" (sic)); Tr. 540 (plaintiff's statement in her Activities of Daily Living self-assessment: "I am unable to be in public situations – so I avoid stores and places with groups of people[]"). The ALJ's RFC limited plaintiff to no interaction with the public, and very limited interaction with co-workers or supervisors. See Tr. 16. These limits address the types of situations that plaintiff's records suggest give rise to her panic attacks. LCSW Egner's 2012 opinion is consistent with the ALJ's finding that plaintiff can work a full time job, as long as she is working in an environment with extremely limited interactions with others. Accordingly, the Court finds that that the ALJ's opinion is consistent with LCSW Egner's 2012 opinion, and any error in the weight the ALJ gave it is harmless. See Ryan v. Astrue, 650 F. Supp. 2d 207, 217 (N.D.N.Y. 2009) (finding harmless error where "the ALJ improperly discounted Dr. Barry's opinions, but nevertheless included those opinions in his RFC"); see also Jones v. Barnhart, No. 02CV0791(SHS), 2003 WL 941722, at *10 (S.D.N.Y. Mar. 7, 2003) (holding that where an ALJ's decision does not conflict with physician's opinions, an error in assigning weight is harmless).

## 2. **LCSW Egner's 2015 Opinion**

The ALJ gave limited weight to LCSW Egner's 2015 opinion, finding: "Ms. Egner appears to have relied quite heavily on the claimant's own reports. Moreover, these assessment are inconsistent with Ms. Egner's treatment notes which show improvement, including the claimant's statement in February 2015 that she had not had anxiety in the waiting room for a while." Tr. 20 (sic). Plaintiff contends that the ALJ should not have discounted LCSW Egner's 2015 opinion on the basis that it relied on plaintiff's subjective reports or because plaintiff showed improvement. See Doc. # 21-2 at 3-5.

"An ALJ may properly give less weight to the portions of a medical opinion that are based on a claimant's subjective statements rather than objective findings." Miranda v. Colvin, No. 13CV06464(RRM), 2016 WL 1240199, at *14 (E.D.N.Y. Mar. 27, 2016); see also Rossow v. Colvin, No. 14CV526(WMS), 2015 WL 5089058, at *3 (W.D.N.Y. Aug. 27, 2015) ("[I]t was entirely appropriate for the ALJ to differentiate between those portions of [the] report based on objective tests and those supported only by Plaintiff's subjective report."); 20 C.F.R. §§404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more

weight we will give that medical opinion."). Accordingly, the Court finds that the ALJ did not err by considering the fact that LCSW Egner's 2015 opinion was based on plaintiff's subjective reports when determining how much weight to give it.

As to the inconsistencies with the treatment notes, "[w]hen a treating physician's opinions are inconsistent with even his own treatment notes, an ALJ may properly discount those opinions." Campbell v. Astrue, No. 12CV6103(MAT), 2013 WL 1221931, at *11 (W.D.N.Y. Mar. 25, 2013); see also Kirk v. Colvin, No. 12CV6075(FPG), 2014 WL 2214138, at *7 (W.D.N.Y. May 28, 2014) ("Inconsistencies between her treatment notes and final opinions constitute 'good reasons' for assigning her opinions non-controlling weight.").

In this case the ALJ concluded that LCSW Egner's 2015 opinion was inconsistent with treatment notes showing improvement. See Tr. 20. The ALJ found: "In February 2015, the claimant reported that it had been the first time in awhile that she had felt anxiety in the waiting room at UCFS." See Tr. 19. Plaintiff argues the ALJ erred because LCSW Egner's February 2015 report contained no such information. See Doc. #21-2 at 3-4 (citing Tr. 1335-39). However, LCSW Egner's January 2015, report states "[plaintiff] reported that for the first time in a while she had felt anxious in the waiting room and was start[l]ed

because someone stood in front of her." Tr. 1332. The January 2015 report goes on to note that plaintiff "reported she has been doing well otherwise and continues to 'lay low' to avoid any panic attacks. [Plaintiff] discussed wanting to sometime get off her medications and she was encouraged to discuss this with her prescriber." Tr. 1332. These two reports both appear in the exhibit cited by the ALJ, Exhibit 39F. See Tr. 19. It appears that ALJ simply referenced the wrong month.

Beyond contesting the ALJ's reference to the February 2015 report, plaintiff does not deny that she has shown improvement, but argues that her improvement is irrelevant. See Doc. #21-2 at 4. ("That [plaintiff] showed 'improvement' over the course of treatment from January of 2013 to April of 2015 is not surprising, but it is irrelevant to the critical inquiry: Has the 'improvement' been sufficient to restore her to functionality?").

In assessing whether LCSW Egner's 2015 opinion is inconsistent with her treatment notes, plaintiff's improvement is a critical inquiry. If, as plaintiff appears to agree, she has shown improvement during her treatment with LCSW Egner, then LCSW Egner's 2015 opinion should reflect that improvement. To the extent LCSW Egner's 2015 opinion portrays plaintiff as being in worse condition than she was in 2012, it is inconsistent with

treatment notes showing improvement. Accordingly, the Court finds that the ALJ did not err in considering the inconsistency between LCSW Egner's treatment notes and her 2015 opinion.

Furthermore, the Court notes that even though the ALJ gave LCSW Egner's 2015 opinion limited weight, the ALJ's RFC findings are actually consistent with LCSW Egner's 2015 opinion. LCSW Egner's 2015 opinion states: "Client's agoraphobia has significant impact on her ability to go out and <u>function in public settings</u>. Client's ability to interact interpersonally is <u>appropriate in controlled, quiet, and 1 on 1 settings</u>." Tr. 1474 (emphasis added).

The RFC limits plaintiff to jobs with no public interaction, and interaction with supervisors or co-workers on only a five to ten percent basis. <u>See</u> Tr. 16. As the VE explained, the job of surveillance system monitor does not require any direct interaction with co-workers; it requires only that an individual signal co-workers to go handle a negative situation. <u>See</u> Tr. 247-48. The surveillance system monitor job requires interaction with supervisors "on an as-needed basis and typically does not go more than the occasional basis[.]" Tr. 247. Accordingly, the RFC finding, and the jobs described by the VE, allow for plaintiff to work in "controlled, quiet, and 1 on 1 settings[,]" as LCSW Egner's 2015 opinion suggested was

necessary. Tr. 1474. Therefore, even if the ALJ erred in the weight he gave LCSW Egner's 2015 opinion, that error is harmless.

### 3. Dr. Raman Gill Chahal's Opinion

Plaintiff also objects, almost in passing, to the ALJ's assignment of great weight to the opinion of Dr. Chahal on the ground that Dr. Chahal did not personally examine Plaintiff. See Doc. #21-2 at 6. Plaintiff does not take issue with any of Dr. Chahal's conclusions, or argue that his report is inconsistent with other evidence; plaintiff argues simply that a reviewing source should not be afforded great weight. See id. Defendant contends that the ALJ may rely on the report of a non-examining medical expert. See Doc. #23-1 at 7.

The Second Circuit has held that "[u]nder the applicable regulations, even 'nonexamining sources' may override treating sources' opinions, provided they are supported by evidence in the record." Netter v. Astrue, 272 F. App'x 54, 55–56 (2d Cir. 2008) (internal citation and quotation marks omitted). Here, the ALJ has not used Dr. Chahal's opinion statement to override a treating source's opinion, but to supplement the opinions of other non-treating sources. Dr. Chahal's opinion statement is supported by the evidence in the record. Accordingly, the Court

finds no error in the ALJ's assignment of great weight to Dr. Chahal's opinion.

### B.    The RFC Finding

Plaintiff challenges the RFC finding, arguing that "[t]here is no discernible basis in the Record before the Court by which the ALJ could rationally conclude that [plaintiff] 'can stand for four hours in an eight-hour work day' and can walk for up to one third of a work day." Doc. #21-2 at 2. Defendant has not responded to this argument.

A claimant's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). An ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted). "This court must affirm an ALJ's RFC determination when it is supported by substantial evidence in the record." Barry v. Colvin, 606 F. App'x 621, 623 n.1 (2d Cir. 2015); see also Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) ("The findings of the Secretary are conclusive if they are supported by substantial evidence.").

In this case, two state agency assessments concluded that plaintiff has the ability to stand or walk for up to 4 hours in a day. See Tr. 274-75 (Assessment dated 2/16/2012); Tr. 307-08

(Assessment dated 7/31/2012). Dr. Jon Gaudio, plaintiff's cardiologist, noted in his report, dated April 18, 2013, that "[plaintiff] has no trouble with ... chest pain when she's walking or exercising, which she does every day." Tr. 1165.

In her Activities of Daily Living self-assessment, plaintiff did not indicate that either walking or standing was affected by her impairments. <u>See</u> Tr. 543. When testifying regarding her obsessive compulsive disorder in 2013, plaintiff stated: "I get up and I clean the house, I clean and clean, and clean, and I keep cleaning." Tr. 188. Plaintiff went on to say, "like, the cat will jump somewhere and go across the floor, and I'm out with the mop again after I just did it." Tr. 188-89.

The state agency assessments; Dr. Gaudio's treatment notes; and plaintiff's description of her activities of daily living provide substantial evidence to support the ALJ's RFC finding that plaintiff is capable performing light work, including standing or walking for up to four hours in a day. Accordingly, the Court finds substantial evidence supports the ALJ's RFC determination.

### C.   The ALJ's Development of the Record

Plaintiff contends that the ALJ erred in failing to more fully develop the record. <u>See</u> Doc. #21-2 at 8. Defendant

responds that "the record was already adequately developed for the ALJ to make a determination." Doc. #23-1 at 9.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Perez, 77 F.3d at 47; see also Swiantek v. Comm'r of Soc. Sec., 588 Fed. App'x 82, 84 (2d Cir. 2015) (same). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quotation marks and citation omitted); see also Walsh v. Colvin, No. 3:13CV687(JAM), 2016 WL 1626817, at *2 (D. Conn. Apr. 25, 2016) ("The ALJ, however, has a duty to develop the record only if the evidence before her is inadequate to determine whether the plaintiff is disabled." (quotation marks and citation omitted)).

Where "the record contains sufficient evidence from which an ALJ can assess claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5, 8 (2d Cir. Jan. 18, 2017) (quotation marks and citations omitted); see also Tankisi v. Comm'r of Soc. Sec., 521

F. App'x 29, 34 (2d Cir. 2013) ("[R]emand is not always required
when an ALJ fails in his duty to request opinions, particularly
where, as here, the record contains sufficient evidence from
which an ALJ can assess the petitioner's residual functional
capacity.").

"When an unsuccessful claimant files a civil action on the
ground of inadequate development of the record, the issue is
whether the missing evidence is significant, and plaintiff bears
the burden of establishing such harmful error." Parker v.
Colvin, No. 3:13CV1398(CSH), 2015 WL 928299, at *12 (D. Conn.
Mar. 4, 2015) (quotation marks omitted); see also Santiago v.
Astrue, No. 3:10CV937(CFD), 2011 WL 4460206, at *2 (D. Conn.
Sept. 27, 2011) ("The plaintiff in the civil action must show
that he was harmed by the alleged inadequacy of the record[.]"
(citation omitted)). Furthermore, "the ALJ's conclusions would
not be defective if he requested opinions from medical sources
and the medical sources refused." Tankisi, 521 F. App'x at 33-
34.

### 1. LCSW Egner's Treatment Notes

Plaintiff argues that though LCSW Egner first saw plaintiff
on October 27, 2011, the record does not include treatment notes
from LCSW Egner until January 14, 2013. See Doc. #21-2 at 8.
LCSW Egner works for United Community and Family Services

("UCFS"), and plaintiff concedes that the record contains "a
number of 'Psychiatrist-APRN Progress Notes' and Treatment Plan
Reviews from October of 2011 forward to the end of 2012." Id.
Nevertheless plaintiff argues the ALJ erred by not asking for
more treatment notes specifically from LCSW Egner.

During the hearing held on May 6, 2013, the ALJ asked
plaintiff's attorney: "With the records that we do have in the
file now, Counsel, do those –- are all the records complete? Is
all the treatment that is out there, has, have we gotten the
records for the treatment?" Tr. 159. Plaintiff's attorney
responded that the only outstanding records were treatment
records from UCFS between November 30, 2012, and the date of the
hearing. See Tr. 159. The ALJ then left the record open to
receive those records. See Tr. 196. Following the hearing,
plaintiff submitted records from UCFS dated from January 13,
2013, through May 28, 2013, which the ALJ accepted as exhibit
35F. See Tr. 352, 1172-95.

During the hearing held on April 6, 2015, the ALJ again
asked plaintiff's attorney: "[A]re there any gaps in the record
now, where there was treatment but you've not yet obtained
records?" Tr. 201. Plaintiff's attorney noted that he had not
received treatment records from Dr. Pasha, and indicated that he
had just that morning faxed the latest records from UCFS to the

ALJ. See Tr. 201-06. Plaintiff's attorney again did not indicate that records from LCSW Egner were missing. See id. At the end of the hearing, the ALJ asked plaintiff and her counsel to request an updated opinion statement from LCSW Egner. See Tr. 252-54. The ALJ then left the record open to receive both LCSW Egner's opinion statement, and records from Dr. Pasha. Following the ALJ's decision, plaintiff requested a review by the Appeals Council, and at that time plaintiff updated the record by submitting LCSW Egner's treatment notes from May 4, 2015, through November 21, 2016. See Doc. #21-2 at 3 n.6.

Plaintiff does not indicate in her motion whether LCSW Egner actually has any treatment notes from October 27, 2011, through January 14, 2013, or whether plaintiff herself requested those records. There is no indication that plaintiff has had any difficulty obtaining treatment notes from LCSW Egner; plaintiff never requested that the ALJ assist her in securing such records, or even let the ALJ know that there might be outstanding records. To the contrary, plaintiff's counsel affirmatively told the ALJ that there were not any outstanding records from LCSW Egner. See Tr. 201-06. In this case, where plaintiff affirmatively informed the ALJ that there were no missing records; the records provided contain medical reports spanning plaintiff's entire time at UCFS, as well as over two

years of treatment notes and two opinion statements from LCSW
Egner; the ALJ affirmatively requested further records in the
form of a second opinion statement from LCSW Egner; and the ALJ
twice left the record open to receive additional medical
records; the Court concludes that the ALJ properly developed the
record. See Eusepi v. Colvin, 595 F. App'x 7, 9 (2d Cir. 2014)
(ALJ properly developed the record where "counsel requested and
obtained an additional two weeks to secure additional medical
records. He subsequently submitted further records to the
agency, representing that the matter was ready to be taken under
advisement by the ALJ.").

Furthermore, even if the ALJ had erred by failing to
request additional records, plaintiff has not met her burden to
show such error would be harmful. The record contains over two
years of treatment notes tracking plaintiff's progress in
treatment, and two opinion statements summarizing LCSW Egner's
treatment. The ALJ accepted LCSW Egner's 2012 opinion, and
crafted an RFC consistent with both of LCSW Egner's opinions.
Plaintiff has not established that additional treatment notes
would have impacted the ALJ's decision. Accordingly, the Court
finds that even if the ALJ had erred, the error would be
harmless. See Johnson, 817 F.2d at 986 ("[W]here application of
the correct legal principles to the record could lead to only

one conclusion, there is no need to require agency reconsideration."); <u>Snyder v. Colvin</u>, No. 5:13CV585(GLS)(ESH), 2014 WL 3107962, at *4 (N.D.N.Y. July 8, 2014) ("[A]dministrative legal error is harmless when the same result would have been reached had the error not occurred." (citation omitted)).

### 2. Opinion Statements from APRNs Phillip Frick, Michele Litwin, and Kate Remauro

Plaintiff contends that the record is incomplete because it does not contain opinion statements from APRNs Phillip Frick, Michele Litwin, and Kate Remauro.[4] <u>See</u> Doc. #21-2 at 9. Plaintiff argues that because Mr. Frick, Ms. Litwin, and Ms. Remauro managed plaintiff's medication through UCFS, the ALJ should have contacted each of them for an opinion statement as to plaintiff's abilities. <u>See id.</u> Defendant responds that the ALJ was not obligated to seek cumulative statements from additional non-acceptable medical sources. <u>See</u> Doc. #23-1 at 9.

When "the record contains sufficient evidence from which an ALJ can assess claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." <u>Monroe</u>, 676 F. App'x at 8. In this case the record contains not only significant treatment notes, but

---

[4] Plaintiff concedes that Phillip Frick did co-sign LCSW Egner's 2012 opinion statement. <u>See</u> Doc. #21-2 at 9 n.18.

also two state agency psychological assessments; two opinion statements from LCSW Egner; and an opinion statement from Dr. Raman Gill Chahal. The Court finds that the record contains sufficient information from which the ALJ could assess plaintiff's mental RFC, and therefore no further medical source statement was required.

### 3.   Opinion Statement from Dr. Jon Gaudio

Plaintiff also argues that once the ALJ learned that plaintiff had suffered from a heart attack, he should have requested a function-by-function assessment from plaintiff's cardiologist, Dr. Gaudio. Defendant does not respond to plaintiff's argument as to Dr. Gaudio.

As the Court noted above, Dr. Gaudio's report, dated April 18, 2013, indicates "[plaintiff] has no trouble with ... chest pain when she's walking or exercising, which she does every day." Tr. 1165. There is substantial evidence in the record to support the ALJ's RFC findings, including state agency assessments, and plaintiff's own testimony as to her activities. The Court finds that the record contains sufficient information from which the ALJ could assess plaintiff's physical RFC, and therefore no further medical source statement was required.

**D. The ALJ's Vocational Analysis**

Plaintiff contends that the VE's testimony was flawed, and the ALJ should not have relied on it. See Doc. #21-2 at 14. Specifically, plaintiff argues that: (1) the VE's description of the job of surveillance systems monitor was inaccurate; (2) the jobs the VE identified do not exist in the numbers to which the VE testified; and (3) plaintiff could not perform the job of scanner based on the ALJ's RFC findings. See id. at 14-23. Defendant responds that the ALJ properly relied on the VE's testimony and that any errors in the VE's testimony did not impact the ALJ's decision. See Doc. #23-1 at 9-11.

### 1. Surveillance System Monitor Job

During his testimony, the VE cited to the Dictionary of Occupational Titles job number 379.367-010 for a job he referred to as "monitor." See Tr. 246. Plaintiff objects to the VE's testimony because the Dictionary of Occupational Titles ("DOT") lists that job as "Surveillance System Monitor." See Doc. #21-2 at 15-16. Plaintiff further objects to the VE's testimony that this job would be in a factory setting, because the DOT definition describes the job as monitoring "premises of public transportation terminals to detect crimes or disturbance[.]" See Doc. #21-2 at 16 n.35.

In this case plaintiff has not identified any way in which the VE's error affected the ALJ's analysis. Plaintiff does not argue that the VE's substantive description of the job was inaccurate, or that the job does not fit the ALJ's RFC findings. Plaintiff briefly questions whether the job exists in the numbers the ALJ cited, a question the Court will address below. Because the errors the VE made in describing the job of surveillance system monitor do not change the evaluation of whether plaintiff is capable of performing the job, the Court finds that any error in relying on the VE's description is harmless and does not require remand. See Johnson, 817 F.2d at 986; Snyder, 2014 WL 3107962, at *4.

## 2. Number of Jobs in the National Economy

Plaintiff next contends that it is "a mathematical impossibility[]" that 120,000 people could be employed as addressers in the national economy. Doc. #21-2 at 18. Plaintiff also questions whether the job of surveillance system monitor exists anymore. See id. at 17. Defendant responds that the VE is an expert in the field, and the ALJ is entitled to rely on the VE's testimony. See Doc. #23-1 at 9-10.

Absent any "applicable regulation or decision ... requiring a vocational expert to identify with greater specificity the source of his figures or to provide supporting documentation,"

Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 450 (2d Cir. 2012), "it is enough that a vocational expert identif[y] the sources he generally consulted to determine such figures[.]" Dugan v. Soc. Sec. Admin., Comm'r, 501 F. App'x 24, 25 (2d Cir. 2012).

Here, the VE testified that he has a bachelor's degree in rehabilitation counseling; that he has a private practice counseling individuals about vocational opportunities; and that he works with the Social Security Administration. See Tr. 242. The VE testified that he has been working in a private capacity since 1982, and working with the Social Security Administration since 1988. See Tr. 242. The VE certified that his testimony was consistent with the DOT. See Tr. 243. The ALJ qualified the VE absent objection from plaintiff. See Tr. 243.

The ALJ provided plaintiff's attorney an opportunity to question the VE. See Tr. 249. Plaintiff's attorney questioned the VE at length about how much interaction an individual would need to have with supervisors and co-workers in the jobs he identified. See Tr. 249-50. Plaintiff's attorney also questioned the VE about the need to stay focused and work at a production pace for the jobs the VE identified. See Tr. 250-51. Plaintiff's attorney did not at any point question the VE's qualifications,

or request more detail as to the number of jobs available at the positions the VE listed.

The VE submitted his credentials, testified that his responses were consistent with the DOT, and answered all of plaintiff's attorney's questions. The Court finds that the ALJ reasonably relied on the VE's expertise. Cf. Jones-Reid v. Astrue, 934 F. Supp. 2d 381, 407 (D. Conn. 2012) ("The VE utilized reliable statistical sources as well [as] personal knowledge and experience to develop the occupational projections provided. While the VE did not provide a step-by-step description of the methodology used, this Court cannot say that the ALJ erred in accepting the VE's testimony as reliable, as there was a sufficient basis for the ALJ to so find."), aff'd, 515 F. App'x 32 (2d Cir. 2013). Plaintiff was also given an opportunity to question the VE, and the ALJ considered the VE's responses. See Brault, 683 F.3d at 451 ("[Plaintiff's] attorney had a full opportunity to explain his objections [to the VE's testimony] in significant detail. Nothing more was required."). Accordingly, the ALJ properly relied on the VE's testimony.[5]

---

[5] Furthermore, the Court notes that even if the addresser and monitor jobs exist in significantly lower numbers than the combined 250,000 the VE listed, they could still constitute a significant number of jobs. "Courts have held that numbers varying from 9,000 upwards constituted 'significant.'" Hanson v. Comm'r of Soc. Sec., No. 315CV0150(GTS)(WBC), 2016 WL 3960486, at *13 (N.D.N.Y. June 29, 2016) (collecting cases), report and

### 3. Scanner Job

Plaintiff contends that the VE also mischaracterized the Scanner job as SVP 2, when it actually has an SVP of 7. See Doc. #21-2 at 17. The Court agrees that the VE erred on this point. Plaintiff argues that an SVP of 7 removes scanner from the requirement for simple, routine, repetitious tasks. See id. Defendant responds that the ALJ is only required to find one job plaintiff is capable of performing. See Doc. #23-1 at 9.

"The Commissioner need show only one job existing in the national economy that [plaintiff] can perform." Bavaro v. Astrue, 413 F. App'x 382, 384 (2d Cir. 2011) (citing 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1566(b)). Because the ALJ properly relied on the VE's testimony about the jobs of addresser and surveillance system monitor, the ALJ met his burden of showing a significant number of jobs in the national economy that

_____

recommendation adopted sub nom. Hanson v. Colvin, 2016 WL 3951150 (July 20, 2016); see also Lillis v. Colvin, No. 3:16CV269(WIG), 2017 WL 784949, at *6 (D. Conn. Mar. 1, 2017) ("[E]ven removing the challenged document preparer position, the VE still identified 16,770 positions in the national economy."); Gilmore v. Comm'r of Soc. Sec., No. 7:15CV00837(NAM), 2016 WL 4079535, at *6 (N.D.N.Y. July 29, 2016) (finding 20,620 jobs in the national economy to be significant); Gray v. Colvin, No. 12CV6485(DGL), 2014 WL 4146880, at *6 (W.D.N.Y. Aug. 19, 2014) (holding that "it cannot be said that totals of over 16,000 jobs nationally ... are not 'significant' as a matter of law"); Daniels v. Astrue, No. 10CIV6510(RWS), 2012 WL 1415322, at *17 (S.D.N.Y. Apr. 18, 2012) (deciding that the "ALJ properly found" that 25,000 jobs nationally "were a significant number of jobs in the national economy that Plaintiff could perform[]").

plaintiff can perform. Accordingly, the error the VE made in characterizing the scanner job is harmless.

### E.  Assessing Plaintiff's Impairments in Combination

Plaintiff contends that the ALJ failed to consider her impairments in combination. See Doc. #21-2 at 24. Specifically, plaintiff argues that the ALJ failed to fully consider plaintiff's back pain, knee pain, and elbow limitations once he found they were not severe, and that the ALJ failed to consider how plaintiff's obesity impacted her other impairments. See id. Defendant responds that the ALJ properly considered all of plaintiff's medical conditions, and that his findings are supported by substantial evidence. See Doc. #23-1 at 11-12.

> The Commissioner is required to "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity" to establish eligibility for Social Security benefits. 20 C.F.R. §404.1523. And, if the Commissioner "do[es] find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process." Id.; see also 20 C.F.R. §416.945(a)(2). Our case law is plain that "the combined effect of a claimant's impairments must be considered in determining disability; the [Commissioner] must evaluate their combined impact on a claimant's ability to work, regardless of whether every impairment is severe." Dixon v. Shalala, 54 F.3d 1019, 1031 (2d Cir. 1995)[.]

Burgin v. Astrue, 348 F. App'x 646, 647 (2d Cir. 2009). The Court will first address whether the ALJ properly considered plaintiff's non-severe impairments, and then consider whether

the ALJ properly considered plaintiff's obesity in combination with her other impairments.

### 1. **Plaintiff's Non-Severe Impairments**

The ALJ found "the claimant's low back issues significantly limited her ability to perform work-related activities during the period at issue. However, the light residual functional capacity would account for the claimant's allegations of back pain." Tr. 14. The ALJ further found: "It does not appear that the claimant's knee pain has been an ongoing problem. Nonetheless, a light residual functional capacity would also account for knee pain." Id. Finally the ALJ found that plaintiff's elbow issues did not "meet the duration requirement for a severe impairment." Id.

Plaintiff argues that after making these findings the ALJ failed to further discuss these non-severe impairments. See Doc. #24-2 at 24. However, plaintiff does not provide any argument as to how these impairments limit plaintiff beyond the ALJ's findings. See id. The ALJ found plaintiff's back pain and knee pain to be non-severe impairments; explicitly considered how they affect plaintiff; and factored them into his RFC finding. See Tr. 14. Accordingly the Court finds the ALJ properly considered these impairments in combination with her other impairments, and substantial evidence supports the ALJ's finding

that they did not limit her beyond a light RFC. See Seekins v. Astrue, No. 3:11CV00264(VLB)(TPS), 2012 WL 4471266, at *7 (D. Conn. Aug. 14, 2012), report and recommendation adopted, 2012 WL 4471264 (Sept. 27, 2012) (finding no error where "the ALJ plainly recognized the plaintiff's allegations of a 'combination of exertional and nonexertional limitations' and considered them together in determining Plaintiff's RFC[]").

Furthermore, as plaintiff does not allege that the ALJ's findings would have been different in any way had he considered these impairments in combination, any error by the ALJ is harmless. See Johnson, 817 F.2d at 986; Snyder, 2014 WL 3107962, at *4.

As to plaintiff's elbow issues, the ALJ found the impairment did not last for twelve months. An impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§404.1509, 416.909. Where plaintiff alleges multiple impairments, "each medically determinable impairment must meet the twelve-month durational requirement before it can be considered as part of a combination of impairments affecting disability." Iannopollo v. Barnhart, 280 F. Supp. 2d 41, 47 (W.D.N.Y. 2003). Plaintiff does not argue that her elbow issues lasted at least twelve months, and substantial evidence supports the ALJ's finding that plaintiff's

elbow issues did not meet the minimum twelve-month durational requirement. See Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) (The Commissioner "is entitled to rely not only on what the record says, but also on what it does not say[.]" (citing Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981))). Accordingly the Court finds that the ALJ properly excluded plaintiff's elbow problems from his analysis.

### 2. Plaintiff's Obesity

Although the ALJ found plaintiff's obesity to be a severe impairment, plaintiff contends that the ALJ did not properly analyze "the effect of [plaintiff's] morbid obesity on her back pain and/or on her anxiety disorder." Doc. #21-2 at 25. Defendant responds that the ALJ fully accounted for plaintiff's obesity and substantial evidence supports his findings. See Doc. #23-1 at 11-12.

In considering the combined effects of plaintiff's impairments, "obesity can rise to the level of a disabling impairment under certain circumstances -- generally speaking, when it increases the severity of coexisting impairments, particularly those affecting the musculoskeletal, cardiovascular and respiratory systems." Crossman v. Astrue, 783 F. Supp. 2d 300, 309 (D. Conn. 2010). "[T]he ALJ is required to consider the effects of obesity in combination with other impairments

throughout the five-step evaluation process." Id.; see also SSR 02-1p, 2012 WL 34686281 at *5 (S.S.A. Sept. 12, 2002) ("[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing."). However, the ALJ "will not make assumptions about the severity or functional effects or obesity combined with other impairments." Id. at *6. "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record." Id.

In this case, the ALJ explicitly considered plaintiff's obesity in combination with her other impairments. See Tr. 16 ("Although obesity itself is not a listed impairment, the undersigned has considered the potential effects obesity has in causing or contributing to impairments in the musculoskeletal, respiratory, and cardiovascular system and that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately."); Tr. 18 ("The undersigned has taken into consideration the claimant's cardiac history along with obesity in reducing her residual functional capacity to light work."). The ALJ does not explicitly address how plaintiff's obesity might impact her

anxiety. However, "[a]n ALJ does not have to state on the record every reason justifying a decision. Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." Brault, 683 F.3d at 448. (internal citation and quotation marks omitted). In this case it is clear the ALJ considered all of plaintiff's impairments in combination "throughout the disability determination process." Burgin, 348 F. App'x at 647. Accordingly, the ALJ did not fail to consider plaintiff's obesity in combination with her other impairments.

Furthermore, plaintiff makes no argument as to how considering plaintiff's obesity in combination with her other impairments, in particular anxiety, would have affected the ALJ's analysis. Instead plaintiff simply asserts in conclusory fashion that "the decision is devoid of any analysis of the effect of Ms. Duprey's morbid obesity on her back pain and/or her anxiety disorder." Doc. #21-2 at 25. Accordingly, any error by the ALJ is harmless. See Johnson, 817 F.2d at 986; Snyder, 2014 WL 3107962, at *4.

## VI.  CONCLUSION

For the reasons set forth herein, the defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc.**

**#23]** is **GRANTED,** and plaintiff's Motion for Order Reversing the Decision of the Commissioner **[Doc. #21]** is **DENIED.**

SO ORDERED at New Haven, Connecticut, this 19th day of April, 2018.

                                    /s/
                          _____
                          HON. SARAH A. L. MERRIAM
                          UNITED STATES MAGISTRATE JUDGE